IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRAVIS WAYNE TOLLEY, ) | |
|     Plaintiff, ) | Civil Case No. 7:19-cv-00863 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| ROCKBRIDGE REGIONAL DRUG ) |     United States District Judge |
| TASK FORCE, *et al.*, ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Travis Wayne Tolley, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. He also filed a motion to amend his complaint (Dkt. No. 7), which the court will grant.[1] The complaint, as amended, is now before the court for review pursuant to 28 U.S.C. § 1915A(a). For the reasons discussed herein, the court concludes that some of plaintiff's claims, as currently pled, fail to state a claim for which relief can be granted, and so must be dismissed. Thus, the court will dismiss some defendants and some claims. With a few exceptions, the dismissal is without prejudice, which leaves plaintiff free to refile a second amended complaint if he can remedy the deficiencies identified in this opinion.

I.    BACKGROUND

Tolley's complaint names twelve defendants: eight individuals, the County of Rockbridge, the City of Lexington, the City of Buena Vista, and the Rockbridge Regional Drug Task Force ("DTF"). The eight individuals are: Virginia magistrate Robyn Wilhelm; the Lexington Police Chief, Sam Roman; and six members of the DTF: A.W. Buzzard, Ben

---

[1] According to Tolley's cover letter, his complaint was rewritten to include "proper redactions" and to correct "a few typos." (Dkt. No. 7-1.) The court notes that the amended complaint only contains the portion of the complaint dealing with factual background, which consists of twenty-six paragraphs, each purportedly stating a separate claim. Thus, the "amended complaint" will be treated as replacing only pages 6 through 18 of the original complaint, Dkt. No. 1. The remainder of the original complaint will remain in effect, including the portion that identifies defendants and the portion that sets forth the monetary relief sought for each claim and the constitutional amendment(s) that Tolley alleges were violated for each claim.

Caldwell, Greg Gardner, Phillip Flint, Andy Fischer, and Troy Wymer. Tolley's allegations arise from a series of events over the course of 2018 in which DTF members searched his Lexington, Virginia residence, where his "rental tenants" also lived, and took other actions that he believes violated his constitutional rights.

Tolley's complaint contains factual matter in twenty-six separate paragraphs, and it identifies a separate constitutional violation against specific defendants based on the facts in each paragraph. Nonetheless, many of the paragraphs are simply part of larger occurrences and it makes sense to group them together by incident/event, which is the approach the court takes in discussing his allegations.

The first challenged search of Tolley's residence occurred on January 10, 2018. Tolley challenges this search on the grounds that, although it was pursuant to a search warrant, the warrant itself was improperly granted on a "bare bones" affidavit signed by defendant Buzzard. He does not provide a copy of the affidavit or the warrant nor any additional detail about either, and he does not allege that any DTF members other than Buzzard had any knowledge that the affidavit was a "bare bones" affidavit. Despite this lack of detail, he alleges that DTF members confiscated his "surveillance equipment," which he summarily states was outside the scope of the warrant. Although it is not clear from his complaint, it appears that he is also claiming that defendants damaged certain property during the course of the search (pulling wires out of the back of four security cameras) and improperly reviewed and listened to some of the seized material, including a "JVC Tape Recorder" that contained private conversations and audio recordings of sexual encounters. (*See generally* Compl. ¶¶ 1–4, 6–10.)

Tolley also refers to certain defendants, on the same date, executing an "all person present" search warrant on his rental tenants at the property. It is unclear based on his limited

2

allegations whether he is claiming that the search of those tenants exceeded the scope of the warrant, but the court will treat the complaint as asserting such a claim. (*Id.*, ¶¶ 3–4.)

At some point during the search, Tolley was arrested. He alleges that defendant Ben Caldwell transported him to the jail in a K-9 transport vehicle with only a thin piece of glass separating him from an out-of-control, growling, and barking dog, despite there being other vehicles present and despite his having explained to Caldwell his extreme fear of dogs. He asserts that this was done for "intimidation purposes." (*Id.*, ¶ 6.)

After the search occurred, because defendants had failed to properly secure his home, Tolley claims that, when he returned two days later after posting bond, he discovered that he had been robbed. (*Id.*, ¶ 5.) Thereafter, defendants refused to investigate or file a report about the break-in and robbery. (*Id.*, ¶ 12.) On the same date, defendants tried to convince Tolley to conduct a controlled buy, which he told them was a violation of his supervised parole. (*Id.*, ¶ 11.) His complaint does not state whether he agreed to conduct or ever did conduct the controlled buy, nor does it allege that any negative consequence resulted from his refusal to conduct it. (*See id.*)

The second search warrant was executed on March 1, 2018. Tolley accuses DTF members of misconduct during the execution of the search warrant, including planting evidence, destroying his property, attempting to break into his iPhone (which he says was not subject to the warrant), and making disparaging remarks about his religion and faith while in his residence. Tolley also states that afterward, he found his "'Bible DVD' with a picture of Jesus on the front cover crucified in black duct tape to" his interior wall, which he describes as a "horrific and intimidating act" by law enforcement officials.[2] (*Id.*, ¶¶ 13–18.)

---

[2] He also described finding a bullet afterward on his side entry porch, but does not explain the purported significance of this.

During the course of this search, he claims that he was found naked in the shower, and that defendant Gardner refused to let Tolley dress himself. Instead, Gardner knelt "down eye level with the plaintiff's penis beside Defendant Ben Caldwell while the plaintiff [was] completely naked in handcuffs standing in the plaintiff's living room" and "proceed[ed] to put a pair of shorts on the plaintiff, not letting the plaintiff dress himself." (*Id.*, ¶ 13.) Plaintiff was not arrested on this date. (*Id.*, ¶ 18.)

In other claims, Tolley alleges that specific DTF members: (1) entered his home without a search warrant or consent in June 2018, when they came to execute an arrest warrant on one of plaintiff's tenants, who was apprehended outside of the residence. While inside, they made disparaging comments about plaintiff in the presence of his rental tenants (Compl. ¶ 19); (2) entered his home without a search warrant to arrest plaintiff on September 6, 2018, and improperly searched the residence for an hour without a warrant before leaving the property to obtain a search warrant and return (*id.*, ¶ 24); (3) conducted a "dirty bust" of Tolley on July 5, 2018, by using an unreliable confidential informant ("CI") and then allowing the CI to break several laws (*id.*, ¶ 20); and (4) pulled over and harassed Tolley's rental tenants when they were pulling out of Tolley's driveway, which occurred on July 19, 2018 (*id.*, ¶ 23.)

Lastly, throughout the time the DTF was apparently investigating him (and starting shortly after its members reviewed the recordings of sexual encounters between Tolley and his girlfriend), Tolley alleges that one of its members, defendant Gardner, was having an inappropriate "sexting" relationship with plaintiff's girlfriend. He refers repeatedly to "sexual misconduct" by Gardner involving his girlfriend, but he does not identify any alleged acts of misconduct other than the "sexting." Without additional detail, he claims that Gardner "manipulated the justice system" by allowing the girlfriend to stay out of jail so they could

4

continue sexting. (*Id.*, ¶ 21.) He names the Lexington Police Chief as a defendant solely for continuing to employ Gardner despite the misconduct. (*Id.*, ¶ 25.)

## II. DISCUSSION

Upon review of Tolley's complaint, the court concludes that some of his claims fail to state a claim and thus are subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

### A. Specific Defendants

#### 1. Magistrate Robyn Wilhelm

Tolley names as a defendant the magistrate who issued the January 10, 2018 search warrant—Robyn Wilhelm. The claim against Wilhelm fails because a magistrate judge is entitled to absolute immunity for acts taken in her judicial capacity. *See Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987) (holding that Virginia magistrates "are entitled to absolute immunity for acts performed in their judicial capacity"). The issuance of a search warrant

qualifies as a judicial act and there is no suggestion that Wilhelm acted without jurisdiction. *See id.* Thus, the claim against Wilhelm fails, and she will be terminated as a defendant.

### 2. Rockbridge Regional Drug Task Force

To state a claim under § 1983, plaintiff must allege a violation by a *person* acting under color of state law. *Loftus*, 848 F.3d at 284–85; *see Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (explaining that § 1983 claims can only be brought against "persons"). The Rockbridge Regional Drug Task Force is not a person and is therefore not subject to suit. *See Clinton v. Berkeley Cty.*, No. 3:08-CV-10, 2009 WL 35331, at *6 (N.D.W. Va. Jan. 6, 2009) ("[I]t is well settled that a drug task force is not a 'person' [amenable] to suit under § 1983."); *Jackson v. Commonwealth of Virginia*, No. 7:06-CV-00306, 2006 WL 1700655, at *1 (W.D. Va. June 16, 2006) (dismissing claim against Northwest Virginal Regional Drug Task Force because it is not a person under § 1983). Thus, this defendant will be dismissed.

### 3. County of Rockbridge, City of Lexington, and City of Buena Vista

Tolley also names the County of Rockbridge, the City of Lexington, and the City of Buena Vista as defendants. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). Thus, a local governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981). To satisfy that requirement, the entity's official policy or custom must have played a part in the alleged violation of federal law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817–18 (1985).

Although a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), a complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this case, Tolley states—in conclusory fashion—that these municipalities have "allowed" the violation of his constitutional rights by the DTF by failing to have a system to oversee or monitor actions of "rogue law enforcement officers." (Compl., ¶ 26.) This conclusory allegation, unsupported by facts, fails to state a claim.

First of all, if the officers are "rogue," then under the common meaning of a person "gone rogue," they are not following any official policy or custom of the localities. Ammon Shea, "We're *Going Rogue*," available at https://www.merriam-webster.com/words-at-play/were-going-rogue (last visited May 13, 2020) (explaining that, in modern expression, the term "going rogue" is "used to indicate that someone is displaying some degree of independence or failing to follow an expected script"). Moreover, Tolley cites to no facts to support his conclusory allegation that these entities have a custom or policy of disregarding unconstitutional acts by individual officers, that they will not supervise or oversee officers, or even that the DTF members' actions have occurred to others or with any regularity. In short, Tolley has failed to state a *Monell* claim against the three localities. Accordingly, they will be dismissed, as well.

### 4. Lexington Police Chief Sam Roman

As discussed in more detail below, the claims regarding Gardner having a sexting or sexual relationship with Tolley's girlfriend are dismissed because, even if true, they fail to allege a violation of *Tolley's* constitutional rights. The sole claim against Lexington Police Chief Sam

Roman is that he "overlook[ed]" Gardner's actions of "sexual misconduct" with plaintiff's girlfriend and an unspecified history of "questionable unethical acts." Accordingly, Roman also will be dismissed as a defendant.

### 5. State Police Investigator Andy Fisher[3]

Lastly, Andy Fisher also will be dismissed without prejudice because the claims arising from the limited incidents in which he was allegedly involved are being dismissed without prejudice.[4] Specifically, Fisher is named in two paragraphs of the amended complaint. First, in paragraph 10, Tolley alleges that Fisher was one of the individuals who returned his "JVC Tape Recorder" to him in January 2018 and that Fisher, along with the other defendants, had listened to all the files on that recorder, including private conversations and recorded sexual encounters between Tolley and his girlfriend. Although Tolley alleges that the recorder was improperly seized, Fisher was not involve in the seizure or in executing the warrant. Nor has Tolley identified any facts to plausibly allege that Fisher should have known it was improperly seized or that there was no reason for defendants to review the files. Thus, no claim will lie against Fisher based on this conduct.

Second, in paragraph 11, Tolley asserts that on the same date, Fisher was one of the defendants who tried to convince plaintiff to violate the terms of his supervised probation agreement by making a controlled buy. As explained in more detail below, Tolley fails to state a

---

[3] In his amended complaint, Tolley spells Fisher's name "Fischer," but the remaining portions of the original complaint—including the list of defendants—spell identify him as "Fisher."

[4] Tolley identifies Fisher as a member of the DTF and a "state police investigator." If he is a state official, then any official capacity claim against him for damages fails regardless. *See Will*, 491 U.S. at 71 ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). And because Tolley has not sought declaratory or prospective injunctive relief against any defendant, (*see* Dkt. No. 1 at 19–25), the exception originally set forth in *Ex parte Young*, 209 U.S. 123 (1908), is inapplicable, and any official-capacity claim must be dismissed in its entirety.

constitutional claim based on this event. Thus, Fisher will be dismissed without prejudice, like the only claims in which he is alleged to have played any role.

### B. Specific Claims

#### 1. *Heck v. Humphrey*

Turning to the claims against the remaining defendants, the court first notes that it has considered whether Tolley's claims related to the searches of his residence, either without a warrant or pursuant to a warrant that he says was based on a deficient affidavit, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* instructs that certain civil claims, if they truly sound in habeas, may not be brought pursuant to § 1983, regardless of the relief sought. For *Heck* to apply and bar a plaintiff's § 1983 claim, two requirements must be met: (1) a judgment in favor of the plaintiff must necessarily imply the invalidity of the plaintiff's conviction or sentence; and (2) the claim must be brought by a claimant who is either (a) currently in custody or (b) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody. *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015) (citations and alterations omitted).

As to the second *Heck* requirement, it appears that it is met here. Based on the records available, the evidence seized in at least some of those searches likely related to Tolley's later convictions. Rockbridge County Circuit Court records indicate that Tolley pled guilty, pursuant to an *Alford* plea, of two drug offenses, and he was sentenced for both on January 16, 2020.[5] In the first case, CR1800768, Tolley was sentenced to three years, with all but one year suspended. The record indicates that the offense was committed and he was arrested on the same date—January 10, 2018—which also is the date of the first search challenged in this case. In the

---

[5] On the same date, he received a revocation sentence (2 years, 9 months, with all but one year suspended) for violating his parole in an earlier case, CR 13000200-01.

9

second case, CR 18000923, Tolley was sentenced to ten years, with all but three years suspended. For that case, the record lists an offense date of July 5, 2018—which is the date of the alleged "dirty buy"—and an arrest date of November 7, 2018.[6] According to records from the Court of Appeals of Virginia, Tolley has not appealed those convictions. Thus, while it is not entirely clear from the complaint, it appears based on publicly available records that Tolley has been convicted and is currently serving a sentence for offenses related to at least some of the searches that he challenges.

But the first *Heck* requirement is lacking, at least based on the current record. As the Fourth Circuit has explained with regard to claims of unconstitutional searches, such claims do not *necessarily* imply that the resulting criminal convictions were unlawful. *Heck*, 512 U.S. at 487 n.7. For example, such a claim "does not necessarily imply the invalidity of a conviction or sentence if (1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." *Covey*, 777 F.3d at 197.

Tolley entered an *Alford* plea in the cases for which he is currently incarcerated, and he does not plead facts in his complaint here that are inconsistent with guilt, at least as to most of his claims.[7] Thus, based on the limited facts available to the court at this time, the court cannot conclude that Tolley's claims are barred by *Heck*. *See Covey*, 777 F.3d at 198 (explaining that where the record did not allow a determination of whether *Heck* applied, the motion to dismiss should be denied and the district court could decide at summary judgment whether *Heck* bars any claims). Upon further factual development, though, the result under *Heck* might be different.

---

[6] Tolley also was convicted and sentenced in February 2019 for petit larceny, a misdemeanor, and received a sixty-day sentence, with all but four days suspended. That offense occurred on August 5, 2018, and he was arrested on August 7, 2018.

[7] The allegation regarding the "dirty buy" might be an exception, as explained below.

## 2. January 10, 2018 Search

Plaintiff alleges that probable cause was lacking for the January 10, 2018 search, in that he describes the search warrant affidavit as "bare bones," but he alleges no *facts* to support this conclusory legal statement. Accordingly, because many of his allegations related to this search depend on whether or not the warrant was supported by probable cause and thus valid (or invalid), the court will dismiss Tolley's claims related to the January 10, 2019 without prejudice to Tolley's ability to file a second amended complaint setting forth facts as to why the warrant was not supported by probable cause.[8]

Further, if the warrant was in fact supported by probable cause, and if he is contending that any items seized in the search were improperly seized, he should provide additional facts regarding those claims. Aside from the description of the affidavit as being "bare bones," his current complaint does not offer any facts to show that the seized items were outside the scope of the warrant. For example, he conclusorily states that the "surveillance equipment" was outside the scope of the warrant, but it is impossible to evaluate that legal conclusion without knowing the scope of the warrant, which he does not provide or describe.

The only factual allegation Tolley arguably makes that the scope of the warrant was exceeded is that although the warrant specified the search of "the residence, vehicles, and outbuildings on curtilage," the officers also executed it on "all person[s] present" at his rental property and specifically on his rental tenants. Even if true, he states no additional facts that would confer upon him standing to challenge a search or seizure of the person of any of his

---

[8] As noted, only one of the agents—Buzzard—provided an affidavit for the warrant, and there is no other indication that the *warrant itself* was facially invalid. Although not dispositive, the Supreme Court has instructed that officers who search pursuant to a facially valid warrant are generally entitled to qualified immunity from civil claims involving searches pursuant to the warrant. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *cf. Smith v. Munday*, 848 F.3d 248, 256 (4th Cir. 2017) (stating same general rule but noting exception "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.") (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)).

rental tenants. *See United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988) (noting that "Fourth Amendment rights are . . . personal rights" and that individuals "lack standing to assert vicariously" the Fourth Circuit rights of another individual). Accordingly, his claim that his tenants' persons were searched fails to state a claim that *Tolley's* Fourth Amendment rights were violated. For the same reasons, he also lacks standing to assert claims that his tenants were "pulled over and harassed" on July 19, 2018 when they pulled out of the driveway. (Compl. ¶ 23.) This, too, fails to assert that any constitutional right of Tolley's was violated.

Tolley's last claim as to the January 10, 2018 search, concerning being transported in a K-9 vehicle, is pled as an Eighth Amendment violation. Based on the facts, however, it appears likely that this incident occurred post-arrest,[9] and excessive force claims by an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). As noted, this claim alleges that he was transported in the K-9 transport van, with only a thin piece of glass separating him from a barking, growling dog. Such a claim clearly fails to state an excessive force claim, because he does not allege that any force was used on him at all.

To the extent it could be construed as a conditions of confinement claim, the court finds that it narrowly survives screening under § 1915A(a). For a pretrial detainee to state such a claim under the Fourteenth Amendment, he must establish that the conditions were imposed with (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Tolley alleges that he was transported in the K-9 van simply to intimidate him, and when there were ready alternatives for transportation, *i.e.*, other police vehicles. Thus, while transport is a nonpunitive governmental objective, it is at

---

[9] If it occurred to effectuate Tolley's arrest, then it is instead properly characterized as a Fourth Amendment claim.

least plausible that, after being told Tolley had an extreme fear of dogs, his transport in a K-9 vehicle instead of another police vehicle that was present could suggest an intent to punish. Thus, the claim narrowly survives screening.

### 3. June 2018 and September 2018 Warrantless Searches

With regard to the alleged warrantless search that happened sometime in June, Tolley states that two DTF officers, defendants Caldwell and Wymer, improperly entered his residence while they were there to arrest one of Tolley's rental tenants. Although the tenant was apprehended outside the residence, Tolley alleges that Caldwell and Wymer entered his residence "without a search warrant, permission, or authorization." (Compl. ¶ 19.) Although there is scant factual matter supporting this claim, the court will not dismiss it under § 1915A(b). He identifies two DTF members who he says entered his residence without any permission or a warrant, which is sufficient to state a plausible Fourth Amendment violation. The same holds true for the alleged warrantless search on September 6, 2020. Thus, those claims will not be dismissed. *See Groh v. Ramirez*, 540 U.S. 551, 559 (2004) ("[S]earches and seizures inside a home without a warrant are presumptively unreasonable.") (citation and alterations omitted).

### 4. March 1, 2018 Search

With regard to the March 1, 2018 search, Tolley alleges that evidence was planted during the search, that the officers exceeded the scope of the search by attempting to break into his iPhone, and that they destroyed property that was his "evidence" as to a different criminal charge. The execution of that warrant also began while he was naked in the shower. He was taken out of the shower and handcuffed. Tolley alleges that, while he was standing naked and handcuffed, he was prohibited from dressing and that Gardner kneeled eye-level with his penis to put on his shorts. Lastly, he describes DTF members making disparaging remarks and comments about Tolley's faith and religion and what he interpreted as desecration of a religious item. (Compl. ¶¶ 13–15.) Taken collectively, these allegations are sufficiently specific to allow his

13

Fourth Amendment claims based on the March 2018 search to survive screening under § 1915A(a). *Cf., e.g., Los Angeles Cty. v. Rettele*, 550 U.S. 609, 615 (2007) (describing circumstances under which it is reasonable for officers executing a search warrant to require persons to remain naked); *see also Hutchinson v. W. Virginia State Police*, 731 F. Supp. 2d 521, 539–40 (S.D.W. Va. 2010), *aff'd sub nom. Hutchinson v. Lemmon*, 436 F. App'x 210 (4th Cir. 2011) (collecting and discussing authority regarding same).

### 5. Claims Regarding Gardner's Relationship With Tolley's Girlfriend

Tolley's complaint makes repeated references to Gardner's improper "sexting" relationship with Tolley's girlfriend and possibly other unspecified "sexual misconduct" involving the girlfriend, who it appears also was a target of the investigation. Tolley does not identify any way in which these alleged actions harmed or affected any of his own constitutional rights, however, nor does he tie them to his convictions. Indeed, he does not allege that they are related to him, other than that the woman with whom Gardner was "sexting" was his girlfriend. Thus, even if Gardner's conduct was improper or unethical, these allegations fail to allege a violation of Tolley's constitutional rights, and any claims based on them must be dismissed.

### 6. Claim Regarding Controlled Buy, Failure to Investigate, and "Dirty Bust"

Tolley also alleges that in January, after he posted bond and returned home, officers violated his Fifth and Fourteenth Amendment rights (which the court presumes are a reference to his due process rights) by trying to convince him to make a controlled buy, despite the fact that he was on supervised probation, and by refusing to investigate his allegation that his home was robbed while he was in jail. (Compl. ¶¶ 11, 12.) Neither of these allegations, as currently pled, state a violation of Tolley's constitutional due process rights. First of all, to the extent any of these claims implicate the Fourth Amendment, the Due Process Clause "is not the proper lens through which to evaluate law enforcement's pretrial missteps" when the Fourth Amendment

14

provides a source of constitutional protection. *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2018).

Moreover, while Tolley does not identify whether he is raising substantive or procedural due process claims, neither have been adequately alleged by the facts here. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff has not alleged that defendants deprived him of a specific liberty or property interest.

Nor do his claims state a substantive due process violation, which requires executive action "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Harkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (citation omitted). The action must be "intended to injure in some way *unjustifiable by any government interest*." *Id.* at 742. The conduct here does not meet that high standard.

As to the request to make a controlled buy, Tolley does not state what the outcome of that pressure was. The fact that law enforcement requested or encouraged him to make a controlled buy, particularly without any assertion that he did so or that any consequence resulted from his refusal, does not implicate due process. Similarly, as to his claims that defendants failed to investigate the robbery at his home, this does not state a constitutional claim. Indeed, it is well established that citizens have no constitutional right to require an investigation into any particular crime or a prosecution of another individual. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (noting that a victim of a crime "does not have a constitutional right to

have the police investigate his case"); *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009) (noting that the plaintiffs "had no right to a criminal investigation or criminal prosecution of another" and affirming dismissal of § 1983 claim).

Finally, Tolley's claim that he was the subject of a "dirty bust" and that the CI was permitted to break laws afterward (Compl. ¶ 20), contains insufficient factual matter to state a constitutional claim. In particular, Tolley does not explain how or why the "bust" was dirty, nor explain anything about what happened during this incident as it relates to him. Moreover, to the extent that he is claiming he was improperly convicted based on evidence from that buy (which is not clear from the complaint), such a claim is likely barred by *Heck*.[10]

### III. CONCLUSION

To summarize, the court will dismiss with prejudice the following:

1. All claims against defendants Wilhelm and the Rockbridge Regional Drug Task Force;

2. Plaintiff's claims based on the search, seizure, or harassment of other individuals, such as his rental tenants, as he lacks standing to raise such challenges; and

3. Claims that defendants refused or failed to investigate the robbery at his home in January 2018.

The court will dismiss without prejudice the claims against Rockbridge County, the City of Buena Vista, the City of Lexington, Fisher, and Roman. In the event that plaintiff has additional factual allegations that can correct the deficiencies in the claims against these defendants, he may file a second amended complaint again naming these defendants.

---

[10] As previously noted, one of his drug convictions was for conduct on July 5, 2018, and his reference to a "dirty bust" could be an allegation that he was improperly convicted based on that controlled purchase.

16

Additionally, the following claims will be dismissed without prejudice:

1. Claims arising from the January 10, 2018 search, with the exception of Tolley's claim regarding being transported in the K-9 transport van as punishment or for intimidation purposes;

2. Any claim arising from allegations concerning Gardner's alleged sexual misconduct in relation to Tolley's girlfriend;

3. Claims based on defendants encouraging Tolley to make a controlled buy in January 2018; and

4. Claims based on Tolley being the subject of a "dirty bust" on July 5, 2018.

Again, if the plaintiff has additional factual allegations that can correct the deficiencies in these claims, he may file a second amended complaint again including these claims.

All other claims remain in the case at this time. The Clerk will be directed to effect service on the remaining defendants, and an appropriate order will be issued.

Entered: May 14, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge