IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TRAVIS WAYNE TOLLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  7:19-cv-863 |
| | ) | |
| BEN CALDWELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GARDNER'S MEMORANDUM IN SUPPORT
## OF MOTION TO DISMISS

Defendant Greg Gardner, by counsel, respectfully submits this memorandum in support of his motion to dismiss Plaintiff's First Amendment free exercise claim.

### BACKGROUND AND STATEMENT OF THE CASE

Plaintiff Travis Wayne Tolley filed this case on December 19, 2019, as a *pro se* prisoner. Tolley has since retained counsel, and filed multiple amended pleadings.  The current active pleading is the Third Amended Complaint ("TAC").  Tolley asserts three causes of action in the TAC, against law enforcement officers Alan Buzzard, Ben Caldwell, and Greg Gardner (collectively, the "defendants").  The first cause of action is a Fourth Amendment claim for unlawful search and seizure, related to separate searches of his home.  The second cause of action is an unlawful seizure claim related to Tolley's alleged detainment on March 1, 2018, where he was held "naked and handcuffed" for over thirty minutes.  The third cause of action is a free exercise claim under the First Amendment, which also stems from March 1, 2018.  Tolley claims the defendants mocked him and damaged some of his religious property.  Officer Gardner moves to dismiss the second and third causes of action.

Tolley alleges that while executing a search warrant at his home on March 1, 2018, unidentified officers broke into his home while he was in the shower.  He was seized, handcuffed, and brought naked to his living room.  (TAC ¶¶ 26-27.)  In the living room, he "stood while a large crowd of law-enforcement officers entered and left his home while the search was conducted."  (*Id.* at ¶ 27.)  "The defendants mocked, laughed and berated Mr. Tolley as he stood naked in handcuffs while his home was searched."  (*Id.* at ¶ 28.)  Tolley made requests to be allowed to dress, but these requests were denied.  (*Id.* at ¶ 36.)  He "was forced to stand naked and handcuffed in his living room for more than thirty minutes as the law-enforcement officers vainly searched his home for contraband."  (*Id.* at ¶ 37.)  "The officers deliberately detained Mr. Tolley and forced him stand [sic] naked and handcuffed long after they had secured the premises and in order to deliberately humiliate him."  (*Id.* at ¶ 38.)  According to Tolley, "[t]here was no need to prevent [him] from dressing in order to protect anyone's safety."  (*Id.* at ¶ 39.)  Eventually, Officer Gardner "placed shorts on Mr. Tolley, but did so in manner [sic] to humiliate [him] by taking up a position inches away from his penis."  (*Id.* at ¶ 30.)

Officers Caldwell and Buzzard "mocked and berated" Tolley about a canvas mounted on his wall that had a psalm and bible verses on it.  (TAC ¶¶ 29, 31.)  Officer Caldwell told Tolley he was "not a preacher boy" and demanded that Tolley recite Psalm 23.  When Tolley complied, Caldwell said "you make me sick."  (*Id.* at ¶ 32.)  Officer Buzzard told Tolley that Tolley was "not a Christian because [he was] a drug addict."  (*Id.* at ¶ 33.)  Buzzard said he was willing to stand before God and asked Tolley if he was willing to do the same.  (*Id.*)  According to Tolley, Buzzard was particularly offended by the canvas on the wall and directed other officers to examine it.  (*Id.* at ¶ 35.)  Buzzard allegedly ripped the canvas from Tolley's wall and destroyed it.  (*Id.* at ¶ 48.)  Tolley alleges "the defendants [took] one of his religious DVD's and taped it to

the wall with black tape as a clear message of desecration and intimidation." (*Id.* at ¶ 49.) Tolley does not specify which defendants participated in this act but simply refers to the "defendants" collectively.

> For his second cause of action, Tolley alleges:
>
> Mr. Tolley was unlawfully seized in violation of his Fourth Amendment right to liberty when he was forced to stand naked and handcuffed in his living room for more than half an hour while his home was searched and while the officers laughed at him and mocked him.
>
> For his third cause of action, Tolley alleges:
>
> The defendants, acting jointly and in concert, violated Mr. Tolley's First Amendment right to free exercise of his religious beliefs when they (i) forced him to recite a Bible verse while he was dressed only in shorts and handcuffed, (ii) denigrated his religious beliefs and mocked him for them, and (iii) destroyed property that contained religious content.

(*Id* at ¶¶ 72, 75.)  Tolley does not allege that Gardner had personal involvement in the alleged deprivation of his free exercise rights.  Moreover, even if Tolley did sufficiently allege Gardner's personal involvement, the allegations in the TAC do not support a free exercise claim.  In addition, Tolley does not allege sufficient facts to show that Officer Gardner unlawfully detained him.  Accordingly, Tolley's second and third causes of action against Officer Gardner are insufficient as a matter of law and must be dismissed.

ARGUMENT

## I.     Standard of Review.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal when a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." *Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp*., 609 F.2d 1083, 1085 (4th Cir. 1979). A court will accept neither "legal conclusions drawn from the facts" nor unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order for a plaintiff's claims to survive dismissal, he must allege facts sufficient to state all the elements of his claim. *Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp*., 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). The Supreme Court requires that a plaintiff provide the grounds of his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II.     Tolley failed to state a Free Exercise claim against Officer Gardner (Third Cause of Action).

### A.  The allegations do not show personal involvement by Officer Gardner.

To assert liability under § 1983, Tolley must affirmatively demonstrate that each defendant acted personally to deprive him of his constitutional rights. *E.g.*, *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Delk v. Moran*, 2018 U.S. Dist. LEXIS 50534, at *15 (W.D. Va. Mar. 27, 2018). "It is particularly important in § 1983 cases against multiple government actors in their individual capacities that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims

4

against him or her." *Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 495 (M.D.N.C. 2011) (internal quotations and citations omitted) (emphasis in original). Allegations like those in the TAC, "that all of the named defendants . . . in concert with each other, performed the allegedly tortious acts stated elsewhere in the complaint" fall short of the established pleading requirements to state a § 1983 claim against Gardner. *Polk v. Montgomery County*, 548 F. Supp. 613, 614 (D. Md. 1982). There are no allegations in the TAC that Officer Gardner had any involvement in destroying Tolley's religious property or mocking his religious beliefs. Instead, the allegations against Gardner are "broad[,] conclusory allegations that defendants were all part of a conspiracy or that each participated in the wrongful conduct, unsupported by specific factual averments relating to defendant [Gardner's] alleged involvement," which are "insufficient to state a cause of action" against Officer Gardner. *Id.* Accordingly, Gardner is entitled to dismissal.

### B.  The allegations fail to support a free exercise claim as a matter of law.

Even assuming, *arguendo*, that Tolley sufficiently alleged Officer Gardner's involvement, his allegations do not support a free exercise claim under the First Amendment. "The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989). In this context, a "substantial burden" is one that puts substantial pressure on an individual to modify his practicing behavior and violate his religious beliefs. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Tolley's free exercise claim is insufficient as a matter of law because he did not allege a substantial burden on his religious exercise.

Tolley's allegations are that the "defendants" collectively (1) mocked and berated him; (2) made him recite a psalm; (3) destroyed a canvas with religious writings on it; and (4) took one of his religious DVD's and taped them to the wall.  (*See* TAC ¶¶ 29-33, 48-49, 75.)  Tolley fails to allege how any of these acts prevented him from practicing Christianity or put pressure on him to violate his religious beliefs.  It is unclear how destruction of a wall-canvas could restrict Tolley from practicing his faith.  *See Miller v. Ferguson*, 2019 U.S. Dist. LEXIS 173821, at *11-12 (E.D. Pa. Oct. 3, 2019) ("Miller also fails to explain how the destruction of his decorative wall posters, even if they had religious content, imposed a substantial burden on his free exercise of his religion.  In other words, Miller does not indicate how the destruction of his property actually prevented him from practicing his faith.")  Likewise, the officers' alleged mocking or forcing him to recite a psalm did not prevent Miller's religious exercise.  It is well established that "[m]ere words alone, however offensive or disrespectful, do not state any constitutional claim."  *Green v. Owens*, 2020 U.S. Dist. LEXIS 214235, at *2 (W.D. Va. Nov. 17, 2020) (citing *Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir. 1999)).  Moreover, in light of the authority discussed, no reasonable officer in Gardner's position would have known he violated Tolley's constitutional rights.  As such, Officer Gardner is entitled to qualified immunity.  *See Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (finding that qualified immunity shields government officials performing discretionary functions from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known).

**III.** **Tolley failed to state a Fourth Amendment claim against Officer Gardner regarding his time spent "naked and handcuffed" (Second Cause of Action).**

Tolley claims he "was forced to stand naked and handcuffed in his living room for more than thirty minutes" as "the law-enforcement officers" conducted a search, and states that "the

officers" deliberately detained him after they had already secured the premises.  (TAC ¶¶ 36-38.)
These allegations do not establish that it was Gardner (or any of the defendants, for that matter)
who forced Tolley to stand naked.  Tolley's vague allegation referring to "the officers" does not
meet the pleading requirements for a § 1983 claim in that it fails to identify who was responsible
for the allegedly unconstitutional conduct.  As alleged, there were several officers involved in the
search; some of whom searched the home and others who monitored Tolley, and at different time
periods.  (TAC ¶¶ 27, 37.)  The TAC does not allege at what point Officer Gardner entered the
scene as opposed to other officers.  (*See id.* at ¶¶ 26-28) (alleging that "officers" seized Tolley as
he stepped out of the shower naked; he was taken to the living room, "while a large crowd of
law-enforcement officers entered and left his home while the search was conducted"; and that
"[t]he defendants mocked, laughed and berated Mr. Tolley as he stood naked in handcuffs while
his home was searched.")  This is a critical error.  The amount of time that Officer Gardner was
present for Tolley's alleged nude detainment is crucial in determining if Tolley has a valid claim.
The only affirmative allegation against Gardner is that he "placed shorts on Mr. Tolley, but did
so in manner [sic] to humiliate Mr. Tolley by taking up a position inches away from his penis."
(*Id.* at ¶ 30.)  If, for example, Officer Gardner helped Tolley dress as soon as he entered the
room, Tolley's claim fails.  *Compare L.A. County v. Rettele*, 550 U.S. 609, 613 (2007) (no
Fourth Amendment violation where deputies ordered a couple to stand, naked and at gunpoint,
for approximately two minutes, until they cleared the area), *with Hutchinson v. Lemmon*, 436 F.
App'x 210 (4th Cir. 2011) (finding a Fourth Amendment violation where the police officers kept
Ms. Hutchinson naked for a period "substantially longer than necessary to secure the home and
protect the officers' safety").  Tolley's failure to allege Gardner's specific involvement is fatal to
his claim.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant Greg Gardner respectfully asks the Court to dismiss the Second and Third Causes of Action with prejudice and for such other relief as the Court may deem appropriate.

GREG GARDNER

By /s/ Julian F. Harf
Jeremy E. Carroll (VSB #41331)
Julian F. Harf (VSB #90775)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: jeremyc@guynnwaddell.com
          julianh@guynnwaddell.com
*Attorney for Defendant Greg Gardner*

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Julian F. Harf
Jeremy E. Carroll (VSB #41331)
Julian F. Harf (VSB #90775)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email: jeremyc@guynnwaddell.com
          julianh@guynnwaddell.com
*Attorney for Defendant Greg Gardner*